UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Laurie Goeman

                    **Plaintiff**

v.

Chippewa Falls Area                Case No. 13 CV 168
Unified School District

                    **Defendant.**

**COMPLAINT**

---

Plaintiff, Laurie Goeman, by her attorneys, Bakke Norman, S.C., by Peter M. Reinhardt, states and complains as follows:

## PARTIES

1. Plaintiff, Laurie Goeman, is an adult resident of the State of Wisconsin and resides at 6588 188th St., Chippewa Falls, Wisconsin.

2. Defendant, Chippewa Falls Area Unified School District, is a public education agency organized and existing under the laws of the State of Wisconsin. Its principal place of business is located at 1130 Miles Street, Chippewa Falls, Wisconsin. Defendant is an employer as defined in 29 U.S.C. § 2611(4).

## NATURE OF ACTION

3. Plaintiff claims that Defendant failed to pay wages for work performed by Plaintiff, in violation of 29 U.S.C. § 206. Plaintiff further claims that Defendant retaliated against her for filing complaints and instituting a proceeding related to the Fair Labor Standards Act, in violation of 29 U.S.C. § 215 (a) (3).

1

## JURISDICTION AND VENUE

4. Jurisdiction in this court is proper as this case presents a federal question and controversy. Venue is appropriate in the Western District of Wisconsin as the conduct giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGOUND

5. Plaintiff, Laurie Goeman, began her employment with the Defendant, Chippewa Falls Area Unified School District, on October 4, 1999, as a Noon Lunch Aide.

6. From late October of 2002 until September 27, 2011, Plaintiff was employed as a Noon Hour Aide at the Chippewa Falls Senior High School.

7. Plaintiff was a part time, rather than a full time, employee. When Plaintiff started working for Defendant, her regularly scheduled work hours were from 9:00 a.m. through 1:00 p.m. Around 2008, Plaintiff's hours were changed to 9:15 a.m. through 1:30 p.m.

8. At all relevant times, Dr. Thomas Hughes was the Superintendent of the Chippewa Falls School District.

9. At all relevant times, the Building Principal at the High School was Dr. Jim Sauter and the Assistant Building Principals were Rebecca Davis and Adam Zenner.

10. Throughout her 12 years of employment with Defendant, Plaintiff received excellent performance reviews from her supervisor.

11. As Noon Hour Aide at the Chippewa Falls High School, Plaintiff Goeman was responsible for monitoring student's attendance, issuing detention slips to students as warranted, distributing lunches to students in the various designated locations, recording receipt of lunches for each student collecting lunch monies, contacting probation officers for behavior or truancy issues and communicating with teachers, support staff and students.

2

12. In addition to the above responsibilities, Plaintiff Goeman routinely attended group staff collaboration meetings and office retreats, and assisted during summer registration periods.

13. During most of her tenure as an employee of Defendant, Plaintiff Goeman worked extra-curricular activities at the high school, for pay.

14. In 2008, Defendant started a new program for freshman referred to as "Lunch and Learn." In 2009, Defendant implemented a new program at the High School, referred to as the SLIP Program.

15. The primary duties and responsibilities associated with administering and monitoring both the "Lunch and Learn" and SLIP Programs were assigned to Plaintiff Goeman.

16. Plaintiff Goeman was not able to complete all duties and responsibilities associated with the SLIP Program during her regularly scheduled hours, and Defendant's management were aware of this fact. As a result, from 2009 through May of 2011, Plaintiff regularly worked from home in the approximate amount of four to six hours per week.

17. Plaintiff Goeman was not paid for the time she was working from home.

18. From 2009 through May of 2011, Principal Sauter and Superintendent Hughes were aware that Plaintiff Goeman was performing working from home and that she was not being paid for this time.

19. On October 7, 2010, Complainant Goeman sent a letter, via e-mail and paper copy, to Human Resource Director Kathy Schultz, Superintendent Hughes, and the School Board members. In the letter, Complainant Goeman complained about Defendant's failure to pay her wages and being denied certain employment opportunities.

20. With respect to wages, the October 7, 2010, letter, page two, states: "In May of 2010, I was denied payment for meetings I had attended outside my scheduled work hours and was denied compensation for extra hours I had worked. No explanation was given to me regarding this."

21. While the meetings were outside of Plaintiff Goeman's regularly scheduled work hours as a Noon Aide, her attendance at the meetings had been specifically approved, in writing, by Defendant's management.

22. To ensure that Plaintiff's October 7, 2010, letter of complaint would not be misconstrued, she specifically wrote: "This email is my official complaint being filed and documented." In her letter, Plaintiff Goeman also quoted policies and procedures from Defendant's staff handbook relating to part-time employees and work hours.

23. Around the middle of November, 2010, Principal Sauter discovered that Defendant's Payroll Department and/or Human Resources Manager had been altering Plaintiff Goeman's timesheets and that she was not being compensated for time that Dr. Sauter, himself, had approved.

24. On November 16 and 17, 2010, Principal Sauter exchanged a number of e-mails with Defendant's Human Resources Manager, Kathy Schultz, in which Dr. Hughes informed Ms. Schultz that Plaintiff was authorized to attend certain meetings and should receive payment for attending these meetings

25. Principal Sauter sent a follow-up e-mail, regarding the non-payment issue, to Superintendent Hughes on November 30, 2010. The e-mail gave specific collaboration dates that needed to be paid. Copies of this e-mail were also sent to Sandi Frion, Human Resource Director Schultz and Robin Jones.

26. On November 30, 2010, as part of Dr. Sauter's investigation into the altering of Plaintiff Goeman's time sheets, he asked Defendant's Integrated Finance Specialist, Sandi Frion, about this subject. When questioned by Dr. Sauter as to why things were happening with Laurie Goeman's timesheets, Sandi Frion replied "Laurie is handled differently."

27. Just hours after Dr. Sauter's e-mail, Plaintiff Goeman received a call from him at home, around 5:00 p.m., on November 30, 2010. During the call, Dr. Sauter informed Plaintiff Goeman that she could not attend any of the upcoming collaboration meetings in December of that year. According to Dr. Sauter, this directive came from Superintendent Hughes.

28. This directive was not given by Dr. Hughes with respect to any of Plaintiff's similarly situated co-workers.

29. As Plaintiff Goeman still had not received payment for her additional hours worked, on December 16, 2010, she proceeded with filing a Labor Standards Complaint with the Equal Rights Division for the State of Wisconsin.

30. Plaintiff Goeman viewed Defendant's sudden refusal to allow her to attend collaboration meetings and still not being paid for additional hours worked, as harassment and intimidation. In addition, it was creating, what she perceived to be, a hostile working environment.

31. As a result, Plaintiff Goeman felt compelled to file an internal harassment complaint. She did so on December 22, 2010, on Defendant's Employee Harassment Complaint Form.

32. In her complaint, Plaintiff Goeman requested to be compensated for work performed, to be treated fairly, and to be offered work opportunities that other part-time

5

employees are allowed. Plaintiff Goeman further stated that she felt she was being singled out and retaliated against for making her complaints.

33. The following month, an e-mail was sent by Principal Sauter to all support staff. This February 8, 2011, e-mail notified the staff of an upcoming meeting. Ms. Goeman, however, was told by Principal Sauter that she was prohibited from attending this meeting. This directive was not issued to any of Plaintiff's similarly situated co-workers.

34. Another e-mail was sent to all staff on April 6, 2011, notifying them of a staff collaboration meeting that included a breakfast provided by student council. Upon receipt of this e-mail, Plaintiff Goeman sent an e-mail to her immediate supervisor, Adam Zenner, inquiring if she would be allowed to attend this staff collaboration meeting.

35. Plaintiff received a response back from Principal Zenner. According to Principal Zenner, based on a directive given from Superintendent Hughes, Complainant Goeman was not allowed to attend this collaboration meeting. This directive was not issued to any of Plaintiff's similarly situated co-workers.

36. Plaintiff was informed that an e-mail was generated by management and distributed to supervisory employees at the School District during the spring of 2011. The e-mails apparently stated that management was not to help Laurie Goeman or would suffer consequences.

37. Historically, Defendant held an all staff retreat that was attended by all Chippewa Falls High School employees, on an annual basis. Complainant attended the retreat in 2010.

38. On August 19, 2011, Principal Sauter telephoned Complainant Goeman and told her that she could not attend this years retreat. This directive was not issued to any of Plaintiff's similarly situated co-workers.

6

39. In the fall of 2011 the Chippewa Falls High School implemented a new online behavioral procedure. As a Noon Aide at the High School, Complainant Goeman also dealt with students and behavioral issues, and it was imperative that they be knowledgeable of this new process.

40. Plaintiff Goeman was notified that if she wanted to attend training on these new behavioral procedures, she would have to alter her hours to do so. This was not feasible for Plaintiff as the trainings were held during the detention time (lunch time) and there was not another employee to cover or monitor the students that were serving detention.

41. In September of 2011, Plaintiff was accused of assisting another employee of Defendant on cheating on a typing test which that employee was taking for potential advancement to a new position.

42. Defendant told Plaintiff Goeman that she had to resign or she would be terminated.

43. As she felt she had no recourse, September 27, 2011, Plaintiff Goeman accepted and signed the Release and Resignation Agreement presented to her that day.

44. On October 7, 2011, Plaintiff subsequently revoked her acceptance of the Release and Resignation Agreement, and she was discharged from her employment position with Defendant.

45. The coworker involved with Plaintiff Goeman in the testing incident was not discharged from her employment with Defendant.

46. Despite repeated requests, Plaintiff Goeman has been barred and precluded from working extra-curricular events since her discharge.

47. Defendant's conduct, as described herein, was attended by circumstances of a willful and reckless disregard of her federally protected rights and interests.

### FIRST CLAIM FOR RELIEF – VIOLATION OF FLSA, 29 U.S.C. § 206

48. Plaintiff realleges and incorporates all previous paragraphs.

49. Defendant violated 29 U.S.C. §206 by failing to pay Plaintiff wages for hours she worked from home and/or that Defendant suffered or permitted Plaintiff to work.

50. Plaintiff suffered pecuniary harm and loss as a result of Defendant's violations of 29 U.S.C. §206.

### SECOND CLAIM FOR RELIEF – VIOLATION OF FLSA, 29 U.S.C. §215

51. Plaintiff realleges and incorporates all previous paragraphs.

52. Plaintiff filed complaints and caused a proceeding to be instituted related to the Fair Labor Standards Act.

53. Defendant discriminated and retaliated against Plaintiff for her complaints and for instituting a proceeding related to the Fair Labor Standards Act by, among other things, refusing to allow her to attend meetings related to her employment position, discharging her from her employment position and precluding her from working extra-curricular events.

54. Plaintiff's protected activities under the Fair Labor Standards Act were the motivating factor in the above-referenced adverse employment actions.

55. Plaintiff has suffered and continues to suffer pecuniary harm and emotional distress related to Defendant's discriminatory and retaliatory actions.

WHEREFORE, Plaintiff Goeman respectfully requests the following relief:

A. Back pay

B. Liquidated Damages

C. Compensatory Damages

D. Attorney's Fees & Costs

E. Such other further relief as the Court deems appropriate.

Dated: March 7, 2013

BAKKE NORMAN, S.C.

By: /s/ Peter M. Reinhardt

Peter M. Reinhardt
Attorney No. 1025187
2919 Schneider Avenue, P.O. Box 280
Menomonie, WI 54751
preinhardt@bakkenorman.com
(715) 235-9016
Attorney for Plaintiff