IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAURIE GOEMAN,

                        Plaintiff,                        OPINION & ORDER

v.

                                                          13-cv-168-jdp

CHIPPEWA FALLS AREA
UNIFIED SCHOOL DISTRICT,

                        Defendant.

---

Plaintiff Laurie Goeman has sued the Chippewa Falls Area Unified School District (the School District), alleging failure to pay wages owed and retaliation for her assertion of her workplace rights. In her part-time position as "noon aide" at Chippewa Falls Senior High School, Goeman monitored student attendance, administered detention, and participated in programs that provided tutoring and support to students.

Hourly employees at the school had to obtain prior approval for time worked beyond their scheduled hours. In 2010, Goeman discovered that she had not been paid for some of her approved extra hours. She raised the issue in a letter to the human resource director, superintendent, and school board members. She also filed a Labor Standards Complaint with the Wisconsin Equal Rights Division. Goeman also felt that she was not being treated fairly or given the same opportunities as her colleagues. In December 2010, she filed an Employee Harassment Complaint with the school district expressing these concerns.

Soon after Goeman lodged the complaints, the School District informed her that she could no longer attend certain work-related meetings and events, including those that she had been attending consistently for years. In 2011, Goeman was involved in an incident in which another school employee cheated on an employment test. Goeman was terminated; the other

employee received less severe discipline. After her termination, Goeman asked to work at school extracurricular events, but the School District refused to employ her for those events.

Goeman sued the School District, claiming violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219. She alleges that the School District failed to pay all the wages she was due and retaliated against her for filing complaints. Before the court is the School District's motion for summary judgment. The court will grant the motion for summary judgment on Goeman's wage claim (29 U.S.C. § 206) because the court concludes that a failure to pay gap time is not a violation of the FLSA. The court will deny the School District's motion with respect to the retaliation claim (29 U.S.C. § 215) because a jury could conclude that Goeman faced adverse employment actions in retaliation for exercising her rights under the FLSA.

UNDISPUTED FACTS

Goeman worked for the School District as an hourly employee during the nine-month school years from October 1999 until September 2011. Goeman understood that she had to obtain prior approval from James Sauter, the principal, for time worked beyond her scheduled hours. The purpose of the hours-approval policy was to meet budgetary constraints and to prevent unnecessary work. Goeman complied with the policy, but she found that squeezing all her work into approximately four hours per day was increasingly difficult.

In April and May 2010, Sauter told Goeman that she was not to work additional hours beyond her schedule. Despite this restriction, she worked from home (without permission and without compensation) after her normal work day to finish her tasks. Goeman was, however, permitted to attend other workplace events and meetings, such as the "collaboration meetings" at which school personnel discussed various topics, including the programs in which Goeman

2

was involved. She discovered later that she had never received payment for hours approved and worked in May 2010; her timecards had been altered by payroll.

Goeman made three complaints in October and December 2010. First, she sent a letter to the human resource director, superintendent, and school board members concerning payment for meetings that she had attended with approval, but for which she had not been paid. Second, she filed a Labor Standards Complaint raising the compensation issue with the Wisconsin Equal Rights Division. Third, she filed an Employee Harassment Complaint with the school district, complaining that she was being treated unfairly and denied the opportunities given to her colleagues. Shortly after she made her complaints, the School District barred Goeman from attending any work-related meetings or events that would require extra payment beyond her regular hours.

Goeman had received positive employee evaluations and had never been subject to discipline until September 2011, when a cheating incident led to her termination. Barb Kruger, a School District secretary, was taking a proficiency test for another job opening in the School District. Kruger twice asked Goeman for help. Each time, Goeman turned for help to Sandy Bowe, Sauter's assistant. When Goeman sought Bowe's assistance the second time, Goeman learned that Kruger was taking a test, and she understood that providing assistance would be improper. Nevertheless, Goeman gave the answer to Kruger.

After investigation, the School District determined that Goeman had improperly assisted Krueger and repeatedly lied about it. Goeman was offered the opportunity to resign, rather than face termination. She initially opted to resign, but she changed her mind, and she was terminated. Kruger was not terminated; she was demoted and barred from applying for job positions within the school district for a period of time.

The resignation agreement would have allowed Goeman to work at extracurricular events. After her termination, Goeman asked to work extracurricular events. But John Frizzell, the athletic director, denied her requests on the ground that her decision to opt for termination meant that that provision of the resignation agreement was void.

This court has federal question jurisdiction under 28 U.S.C. § 1331 because Goeman's claims arise under the Fair Labor Standards Act.

ANALYSIS

Summary judgment is appropriate if the School District "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on the School District's motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to Goeman. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.* at 248.

**A.  Failure To Pay Wages**

The FLSA prescribes certain minimum wage and overtime pay requirements. 29 U.S.C. § 206. The federal minimum wage is $7.25 per hour for non-exempt employees. Non-exempt employees must receive overtime pay at the rate of one and one-half times their basic hourly wage for hours worked in excess of 40 hours per week. For her regular schedule, Goeman was paid $9.92 per hour before the 2010-11 school year and $10.12 per hour thereafter. In her December 2010 Labor Standards Complaint filed with the Wisconsin Equal Rights Division, Goeman sought payment of $92.91 for additional work that had been approved by her immediate supervisor. Goeman's claim did not involve overtime pay, because the additional unpaid hours did not put her over 40 hours for any week.

Goeman makes a claim for "gap time," which is a claim for unpaid hours that do not result in overtime and that do not produce an effective hourly wage below the federal minimum. Goeman estimates that she worked four to six additional hours per week from home. Adding six hours of unpaid time to Goeman's 20-hour work week results in a 26-hour work week, which is under the 40-hour limit. At Goeman's hourly wage, adding six unpaid hours to her week results in an effective hourly wage of at least $7.73 per hour. This is less than Goeman's basic hourly wage, but it is above the $7.25 minimum wage prescribed by the FLSA. Although it may be unfair to leave Goeman uncompensated for the additional six hours, the question here is whether a gap-time claim is actionable under the FLSA.

The Seventh Circuit has not addressed whether a failure to pay gap time is a violation of the FLSA. Goeman acknowledges that the majority of federal circuit courts have concluded that a failure to pay gap time is not a violation of the FLSA, but asks that this court follow the contrary holding adopted by the Tenth Circuit and District of Massachusetts. Dkt. 30, at 19. The court declines to do so. As the School District notes, divergent opinions were previously considered by this court and rejected. *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108 (W.D. Wis. Apr. 11, 2011). The court will follow the reasoning in *Espenscheid*. The FLSA requires that employers pay a minimum hourly wage and that they pay time-and-a-half for overtime hours. But the FLSA does not mandate all other aspects of employee compensation. Goeman's pay, even with the additional hours uncompensated, does not run afoul of either the minimum wage or the overtime requirements of the FLSA, and thus her complaint does not state a claim for a violation of the FLSA. The School District's motion for summary judgment will be granted as to this claim.

5

**B. Retaliation**

The FLSA includes an anti-retaliation provision that forbids employers from terminating or discriminating against any employee because the employee has filed a complaint under or relating to the FLSA. 29 U.S.C. § 215(2). To prevail on her retaliation claim, Goeman would have to show that she engaged in the statutorily protected activity of asserting her FLSA rights and that she was discharged or suffered some other form of discrimination as a result. Retaliation under the FLSA can be proven using either the direct or indirect method of proof, using the methodology developed for discrimination cases. *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 810 (7th Cir. 2005).

Under the direct method of proof, Goeman can show retaliation with evidence that: (1) she engaged in a statutorily protected activity; (2) the School District subjected her to an adverse employment action; and (3) a causal connection exists between the protected activity and employment action. *Treadwell v. Office of the Illinois Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006) (citation omitted). The direct method of proof does not preclude reliance on circumstantial evidence. *Id.* "[C]ircumstantial evidence that is relevant and probative on any of the elements of a direct case of retaliation may be admitted and, if proven to the satisfaction of the trier of fact, support a case of retaliation." *Id.* (citing *Sylvester v. SOS Children's Villages of Illinois*, 453 F.3d 900, 902-03 (7th Cir. 2006)).

To establish retaliation under the indirect method of proof, Goeman must show that: (1) she engaged in a statutorily protected activity; (2) the School District subjected her to an adverse employment action; (3) she was performing satisfactorily; and yet (4) was treated less favorably than a similarly situated employee. *Jajeh v. County of Cook*, 678 F.3d 560, 573 (7th Cir. 2009) (citation omitted). The burden then shifts to the School District to provide a legitimate

6

reason for its employment action. *Id.* If the School District satisfies this burden, Goeman must show that the School District's reason is a pretext. *Id.*

Before turning to the merits of Goeman's retaliation claim, the court must consider the preliminary question of the applicable statute of limitations. The parties dispute whether the appropriate statute of limitations under the FLSA is two years or three. The court is persuaded that Goeman is entitled to a three-year statute of limitations. 29 U.S.C. 255(a) ("[A] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."). In addition to alleging willfulness in her complaint, Goeman points to the undisputed fact that Kathy Schultz, the School District's human resource director, knew that retaliation against an employee who has complained about wage and hour violations is illegal. For practical purposes, however, the statute of limitations has only a minor impact on the case. The only adverse employment actions that would fall outside of the standard two-year statute of limitations would be Goeman's exclusion from collaboration meetings from December 2010 through February 2011. Because Goeman was also excluded from collaboration meetings throughout the rest of 2011 until her termination, the longer statute of limitations has a marginal effect on her claims.

1. **Protected activity**

For the purposes of summary judgment, the School District concedes the first element of Goeman's prima facie case: Goeman engaged in statutorily protected activities. Dkt. 11, at 8. Goeman identifies three protected activities. First, on October 7, 2010, Goeman sent a letter to the human resource director, superintendent, and school board members regarding payment for meetings she attended. Dkt. 30, at 5. Goeman explained that she had been denied payment for these extra work hours. Second, in December 2010, Goeman filed a Labor Standards Complaint raising the compensation issue with the Wisconsin Equal Rights Division. *Id.* Third, on

7

December 22, 2010, Goeman filed an Employee Harassment Complaint with the school district. *Id.* In addition to requesting payment, Goeman stated that she sought to be treated fairly.

2. **Adverse employment action**

To be actionable, an adverse employment action must be material. Materially adverse actions are those that might dissuade a reasonable employee from engaging in protected activity. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Goeman asserts that the School District subjected her to three adverse employment actions: (1) exclusion from collaboration meetings and other work events; (2) termination; and (3) post-employment retaliation, specifically the denial of her opportunity to work at extracurricular events. Dkt. 30, at 6-11. The School District agrees that Goeman's termination is an adverse employment action. Dkt. 11, at 10. But the School District argues that the exclusion from work events and the denial of post-termination work are not materially adverse actions.

a. **Exclusion from collaboration meetings and other work events**

Beginning in 2008 or 2009, collaboration meetings among a broad group of school employees generally occurred twice a month. Topics of discussion regularly included student attendance and programs such as SLIP (a tutoring program), which were a significant part of Goeman's job responsibilities.

Beginning in November 2010, about a month after her first written complaint, Goeman's participation in collaboration meetings was restricted. On November 30, 2010, Sauter informed Goeman that she could not attend collaboration meetings the following month. This directive came from superintendent Thomas Hughes, who reiterated the restriction in a December 31, 2010, email that "[e]ffective immediately and until further notice, if you want to Ms. Goeman to be a part of Collaboration Time, you will have to find a way to use existing and established

'regular hours' to do so." Dkt. 28-11. After the email, Goeman was never again approved to attend collaboration meetings.

In 2011, Goeman faced further restrictions on her participation in work events. In April 2011, Goeman's request for extra time to attend an appreciation breakfast hosted by the student council was denied. Goeman was not allowed to attend the August 2011 school retreat. Goeman had consistently worked registration since 2006, which provided her with significant extra hours, but she was not permitted to work registration in 2011. In fall 2011, the School District implemented a new online procedure for processing detentions and disciplinary referrals. Goeman was permitted to take a training session, but only if it could be completed within her scheduled hours. As a result, Goeman missed about half of the training session.

As the School District points out, "not every change that makes an employee unhappy is actionable." *Moser v. Indiana Department of Corrections*, 406 F.3d 895, 904 (7th Cir. 2005). Trivial harms, petty slights, and minor annoyances are not enough. *Burlington Northern*, 548 U.S. at 68; *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009). But the category of adverse employment actions is broader in retaliation cases than it is in discrimination cases. *Benuzzi v. Board of Education of the City of Chicago*, 647 F.3d 652, 665 (7th Cir. 2011). The School District's actions against Goeman might well dissuade a reasonable employee from making the kinds of FLSA complaints that Goeman made, and thus the court concludes that these exclusions from collaboration meetings and other work events are materially adverse under the standard established by *Burlington Northern*. *See* 548 U.S. at 68.

The Seventh Circuit considered restrictions similar to those faced by Goeman in *Benuzzi*, 647 F.3d at 661, 665. The plaintiff had received an hours restriction memorandum and a Notice of Disciplinary Action one day after she was deposed in her suit alleging several statutory violations, including discrimination and retaliation under Title VII, against her employer. *Id.*

9

The hours restriction memorandum was issued without explanation, and the Notice of Disciplinary Action listed old "petty misdeeds." *Id.* In that case, the court concluded that the issue should go to a jury; a reasonable employee could be deterred from pursuing a lawsuit if doing so would be followed by restricted access to the workplace and the threat of discipline for timeworn actions. *Id.*

Like the restrictions in *Benuzzi*, the restrictions Goeman faced were important enough to dissuade a reasonable employee from engaging in protected activity. Topics of discussion at collaboration meetings often related to Goeman's job responsibilities and, from December 2010 until her termination, she could no longer voice her ideas and concerns there. Goeman argues that exclusion from these meetings "affected [her] access to information, ability to affect [sic] change, and her overall ability to do her job." Dkt. 30, at 8. The court agrees. The parties do not dispute that SLIP, Lunch & Learn, and the Alternate Learning Center comprised a significant part of Goeman's duties and, accordingly, they took up much of her time as noon aide. It is also undisputed that these programs and initiatives were often discussed at collaboration meetings. Goeman's exclusion from these meetings disconnected her from personnel and developments at the school that directly affected her job. In addition to isolating Goeman from her colleagues, the School Board's actions would require her to do additional work to stay apprised of the programs and initiatives that constituted a major part of her responsibilities.

Goeman's exclusion from collaboration meetings might well have fettered her career progression. As part of her 2011 performance evaluation, she received praise for her work beyond her regular schedule, including the statement that "Mrs. Goeman has come to me in person and/or contacted me by phone or email to update me on a student's attendance and/or behavior. Some of this communication occurs after the normal work day, because that is how

much Mrs. Goeman values her job." Dkt. 28-14. Cutting any extra time for Goeman could have affected her future performance evaluations and, ultimately, her career progression.

Exclusion from collaboration meetings had another effect: lost income. Prior to her complaints, Goeman had been paid for at least some extra time spent on the programs and initiatives on her plate. Her colleagues continued to be paid for attendance at collaboration meetings throughout 2011. Considering Goeman's part-time status, the loss of even a few extra hours could have been material to her. This reasoning extends to Goeman's exclusion from working registration and attending the breakfast, retreat, and training session. Goeman had consistently worked registration since 2006, so she missed out on the opportunity to earn additional income that she might have come to expect and that others were permitted to earn. A part-time employee faced with deprivation of income and denial of direct access to information crucial to the employee's position could very well decide that pursuing an FLSA complaint would not be worth the risk.

In these circumstances, the determination of whether the School Board's actions were materially adverse should be left to a jury. *Benuzzi*, 647 F.3d at 665. In view of the evidence in the record and the School District's burden on summary judgment, the court concludes that a jury could find that Goeman's exclusion from collaboration meetings and other work events was an adverse employment action.

      **b.**    **Post-employment retaliation**

After her termination, the high school administration decided that Goeman would not be permitted to work at sporting events for the remainder of the fall season. Goeman's resignation agreement had included a provision allowing her to work at extracurricular events. The School District took the position that, with her rescission of that agreement, the provision was void.

11

Although Goeman wanted to work at extracurricular events, she was consistently denied the opportunity.

Statutory protection against retaliation does not end when the employer-employee relationship ends. *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 890-91 (7th Cir. 1996). A former employer's ability to "blacklist" a former employee, limiting or eliminating future job opportunities, is one way a resentful employer may retaliate against a former employee. *Id.* The School District argues that refusing to allow Goeman to work at events is not an adverse employment action because protection extends only to interference with or impairment to work for a different employer. Dkts. 11, 10. The School District also contends that Goeman's situation does not qualify for protection because she sought to work occasional hours, as opposed to a full-time or even part-time job. Dkts. 32, 10. Finally, the School District believes that the opportunity is too trivial to constitute an actionable adverse action. *Id.*

The School District cites *Veprinsky* for the principle that former employees have a retaliation claim only if the alleged retaliation (1) impinges on their future employment prospects or (2) otherwise has a nexus to employment. 87 F.3d at 891. Goeman's post-termination claim certainly satisfies these criteria. She was, in a sense, blacklisted by the School District, not to other potential employers, but for future School District work. The decision not to rehire a terminated employee is a proper basis for a viable retaliation claim. *Id.* at 892-93. The School District provides no support for its contention that the denial of part-time work or even occasional part-time work cannot be actionable. The court concludes that a jury could find that the School District's refusal to rehire Goeman is an adverse employment action that supports her claim of retaliation.

3.  **Retaliatory intent**

The next question is whether Goeman can show that the adverse actions she faced were motivated by retaliation. The School District contends that they were not. According to the School District, the restriction of Goeman's work activities and hours was motivated by budgetary concerns, and her termination was due to her involvement in the cheating episode and her dishonesty about it. The School District's decision not to hire her for extracurricular activities after her termination was simply an extension of its decision to terminate her.

In cases like this, the evidence tending to show a retaliatory purpose also tends to show that the proffered reasons for the adverse action are a pretext. Accordingly, the inquiry into the prima facie case and the pretext inquiry will often merge. *See, e.g., Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 688 (7th Cir. 2007). In the analysis of whether the adverse actions against Goeman were motivated by retaliation, the court will consider evidence of causation and evidence of pretext together.

a.  **Exclusion from collaboration meetings and other work events**

To show retaliation under the direct method, Goeman must adduce evidence of a causal connection between her protected activities and the adverse action. *Treadwell*, 455 F.3d at 781. With respect to collaboration meetings and other extra hours, the School District's purportedly legitimate reason for Goeman's treatment is that the School District did not have enough money to pay employees for extra time. Hughes sent an email to several individuals, including Goeman, to inform them of the hours restrictions and explain its basis:

> Effective immediately and until further notice, if you want Ms. Goeman to be a part of Collaboration Time, you will have to find a way to use existing and established 'regular hours' to do so. First, Ms. Goeman has at one time or another made formal allegations against the district, and it is regularly advised that we maintain the "status quo" under such circumstances that may lead to an

13

> investigation. Second, despite my repeatedly telling you in your office how tight the budget would be this year, you have already spent 150% of your account for "extra time" prior to even researching mid-year. Simply put, you don't have the dollars to continue offering extra time to Ms. Goeman or anyone else.

Dkt. 28-11.

But Goeman has adduced evidence that Hughes's explanation was a pretext and that the School District's true purpose was retaliation. Sauter testified at his deposition that "in my view that [Hughes's email] was a manufactured excuse." Dkt. 16 (2/13/2013 Sauter deposition), 19:24-20:5. Sauter believed that the School District had sufficient funds to cover the costs of "extra staff time for various things that need to be done at the high school," Dkt. 16, 20:25-21:4, and yet the School District claimed that the budget was so tight that neither Goeman nor any other employee could be paid for extra time. In fact, other employees did receive payment for extra hours approved and worked after Hughes sent the email. The School District argues that Sauter made his comment because he was "disturbed by the allegation about his alleged mis-management." Dkt. 33, at 23. The School District would be free to argue this point to the jury. But if Sauter's testimony is believed, a reasonable jury could find that the School District's stated reason for restricting Goeman's hours was a pretext.

In fact, Hughes's email contains direct evidence of retaliation. The email states that her "formal allegations against the district" were, in part, a basis for the restriction on her hours. Dkt. 28-11. Hughes's comment is the kind of ambiguous statement that a reasonable jury could find indicates a retaliatory intent. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 973-74 (7th Cir. 2012) (explaining that whether ambiguous statements are circumstantial evidence of retaliation is an appropriate question for a jury in an analysis under the direct method). The direct method often involves some "convincing mosaic" of circumstantial

evidence, including ambiguous statements, that would allow the jury to infer that the action was taken for a discriminatory reason. *Sylvester*, 453 F.3d at 903; *see Jajeh*, 678 F.3d at 570.

To show retaliation under the indirect method, Goeman must identify "comparators," similarly situated employees who were treated more favorably. An employee is similarly situated to a plaintiff when they are directly comparable in all material respects. *Patterson v. Avery Dennison Corp., Inc.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). The court's inquiry requires consideration of the circumstances as a whole and relevant factors in the context of the case. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006); *Patterson*, 281 F.3d at 680.

Goeman offers Cathy Thompson as a comparator. Like Goeman, Thompson was a part-time employee supervised by Sauter. They were also in the same union bargaining unit. Goeman and Thompson both requested approval and payment for attendance at collaboration meetings. But unlike Goeman, Thompson was authorized to attend (and receive payment to attend) collaboration meetings beyond her scheduled hours in December 2010 and throughout 2011. Dkt. 28-2. The December 1, 2010, meeting summary drafted by Thompson suggests that others were also treated more favorably than Goeman: "Dr. Sauter stated that Laurie would not be attending thru December. Dr. Hughes needed to review her case. There are others that are paid for coming in before their scheduled contract time to attend these collaboration meetings, myself included." Dkt. 28-6. Thompson and others received approval and payment for their attendance at collaboration meetings, which shows that the School Board treated Goeman less favorably than comparable colleagues with respect to her participation in collaboration meetings.

Goeman has adduced evidence under both the direct and indirect methods that, if believed, would allow a reasonable jury to infer that the restrictions on her work activities were motivated by retaliation for her FLSA complaints.

### b. Termination

Goeman appeals to the indirect method to establish that her termination was motivated by retaliation. Under the indirect method, Goeman must show that she was satisfactorily performing her job duties, and she must identify a similarly situated employee who was treated more favorably. In this context, an employee is similarly situated to a plaintiff when they are directly comparable in all material respects, "which includes showing that coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (citations omitted).

It is undisputed that, at least until the cheating incident, Goeman had performed well and had never been subject to discipline. As recently as her 2011 performance evaluation, Goeman received the highest rating in 19 out of 21 categories. Dkt. 28-14.

Given the nature of the cheating incident, Goeman has a ready example of a similarly situated coworker. Kruger, who had been employed by the School District since 1997, was the individual taking a test for a job opening at the School District. Kruger cheated by asking Goeman (and indirectly, Bowe) for assistance. Kruger was a secretary, and thus a lower-level employee like Goeman, and she was part of Goeman's union bargaining unit. Dkt. 14, at 35. Thus, Goeman and Kruger were similarly situated at the time of the incident.

Unlike Goeman, Kruger had never lodged any verbal or written complaints with the school district. Dkt. 24. The School Board's investigation into the cheating incident did not absolve either Goeman or Kruger. But Kruger was not terminated. Rather, she was demoted (resulting in lost employment benefits) and barred from applying for job positions within the

16

school district. Kruger, who was at least as culpable as Goeman in the incident, was treated more favorably.

The School District contends that Goeman was fired because she repeatedly lied during the investigation of the cheating incident. The parties dispute whether Goeman was contradictory and dishonest. But even if Goeman was not credible, she has adduced evidence—testimony from union steward Cathy Bergevin—that Goeman was treated more harshly than other school district employees. This evidence would tend to show that the School District's proffered explanation was a pretext. Bergevin had been employed by the School District since 1992. In 2004, Bergevin became the union steward for the bargaining unit and was involved in the discipline of all employees in the unit: classroom paraprofessionals; special education paraprofessionals; clerical employees; instructional assistants; health assistants; and noon hour monitors. From 2004 until Goeman's termination in 2011, no employees who passed their probationary period had been discharged. Goeman points to a number of incidents of "conduct involving much more serious misconduct than what [Goeman] was accused of" which did not result in termination. Dkt. 30, at 15. These incidents include: physical contact with a student (which involved police); poor judgment in handling student health concerns; yelling at students while displaying scissors; conduct warranting reference to the workplace violence policy; and improper use of school computers. Dkts. 26-1, 26-2.

Each of these incidents involve transgressions more serious than Goeman's. But the offense involving the improper use of school computers is particularly informative, because it involves employee dishonesty, which the School District contends is a basis for Goeman's termination. The disciplinary notice issued in connection with the computer-abuse offense stated: "We therefore have concluded that you were not honest in your responses to our questions at our recent meeting." Dkt. 26-2, at 5. The employee was deemed to have been

dishonest during an investigation by the School District, but was given only a written warning. The incidents reported by Bergevin provide evidence that the School District singled out Goeman for particularly harsh treatment. Bergevin's affidavit testimony is that Goeman's termination "was excessive given past practices of the School District and did not fit the conduct for which the discipline was imposed." Dkt. 26.

If Goeman's evidence is credited, a reasonable jury could find that the School District's explanation for Goeman's termination was a pretext, and that its true motive was retaliation.

### c. Post-employment retaliation

The School District was apparently willing to have Goeman work at extra-curricular events even after the cheating incident, so long as Goeman agreed to resign rather than be terminated. But once Goeman decided that she would not willingly resign, the School District rescinded its offer to hire Goeman at extra-curricular events. These circumstances make it clear that the School District's motivation for refusing to hire Goeman for extracurricular events was not concern over Goeman's honesty. Its refusal to hire her was specifically a response to her decision not to resign. Athletic Director John Frizzell made this clear in an October 10, 2011, email to Goeman:

> The high school administration team has decided that you are no longer able to work at sporting events for the remainder of the Fall season. This is due to the fact that with the rescinding of your resignation and subsequent termination, the stipulation that you would be allowed to work events that was placed into your resignation letter is now void.

Dkt. 28-22.

If Goeman's termination was retaliatory, then the School District's decision to extend that termination to include extracurricular events was also retaliatory. Accordingly, the School District's motion for summary judgment will be denied as to this employment action.

ORDER

IT IS ORDERED that:

1) Defendant's motion for summary judgment, Dkt. 9, is GRANTED as to plaintiff's wage claim under 29 U.S.C. § 206; and

2) Defendant's motion for summary judgment, Dkt. 9, is DENIED as to plaintiff's retaliation claim, 29 U.S.C. § 215.

Entered this 17th day of July, 2014.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge